1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DONALD RAYE RANDOLPH,

      Petitioner,

 vs.

DERRAL G. ADAMS, Warden,

      Respondent.

_____/

No. C 02-4196 JSW (PR)

**ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS**

**INTRODUCTION**

    Petitioner, a state prisoner incarcerated at California State Prison, Corcoran, filed a pro se petition for a writ of habeas corpus under 28 U.S.C § 2254.  On December 12, 2002, Judge Vaughn R. Walker issued an order to show cause as to all claims except the Fourth Amendment claims involving illegal searches (Claims Fourteen and Fifteen).  *See* Docket No. 4 (dismissing Fourth Amendment claims as not cognizable).  On January 14, 2003, the case was reassigned to this Court. On May 12, 2003, Respondent filed an answer and memorandum of points and authorities in support thereof (docket nos. 14, 15.)  On November 8, 2004, Petitioner filed a traverse to Respondent's answer (docket no. 42).  For the reasons stated below, the petition is denied on the merits.

**PROCEDURAL BACKGROUND**

    On December 3, 1997, a jury in Alameda County Superior Court convicted Petitioner of two counts of burglary and receiving stolen property, possession of an assault weapon, and two counts of

being a felon in possession of a firearm. Answer, Ex. 1D at 735-742. The jury also found true allegations that Petitioner was on bail when committing one of the burglaries and one of the receiving stolen property counts. *Id.* In a bifurcated proceeding, the jury found true the allegation that Petitioner suffered a prior conviction for a federal felony, which the Superior Court determined to be "serious and violent" under the three strikes law. *Id.* at 820-824. On or about March 27, 1998, Petitioner was sentenced to 21 years and 8 months in state prison. *Id.* at 917-918; Ex. 2E at 1233-1244.

Petitioner appealed his conviction which the Court of Appeal affirmed in an unpublished opinion dated August 9, 2000. *Id.,* Ex. 10. Petitioner filed a petition for review which the California Supreme Court denied on November 29, 2000. *Id.*, Ex. 12. Petitioner filed petitions for writs of habeas corpus in Alameda Superior Court, the Court of Appeal, and the California Supreme Court, which denied his last petition for state habeas corpus relief on August 14, 2002. Pet. at 4-5; Answer, Exs. 13 and 14.

Petitioner filed the instant petition on September 4, 2002.

**FACTUAL BACKGROUND**

The facts underlying the charged offenses, as found by the Court of Appeal of the State of California, First Appellate District, Division One, are summarized below:

**Handleman/Andersen Burglary and Receiving Stolen Property**

In the evening of July 17, 1994, Scott Handleman and Laura Andersen called the police to report a burglary. Officer Babka was dispatched at 1:30 a.m. on July 18, 1994, to take the report. The victims reported that they shared a room, and after a meeting with their housemates, they discovered that property was missing. The missing items included Scott's backpack, containing a Stanford notebook, and his wallet, which held his driver's license, a credit card, an ATM card, and a Stanford dining card. Laura reported that she was missing her portable stereo, 60 CD's stored in three wine crates, and her wallet, which held, among other things, credit cards, ATM cards, driver's license, and student identification.

Meanwhile, at approximately 2 a.m. on July 18, 1994, Officers Sarna and Mathison observed appellant drive a silver Cadillac through a stop sign. As the Cadillac turned and accelerated onto the freeway, the officers followed, and activated the red lights and siren. Sarna, over the car's public address system, instructed appellant to pull over. Appellant continued to drive at approximately 40 miles an hour. Sarna observed that he repeatedly reached under the seat. After travelling approximately a mile, appellant pulled over, briefly stopped, and then

2

**United States District Court**
For the Northern District of California

resumed driving.  The officers continued their pursuit, while appellant changed freeways and passed an exit before finally stopping.  The officers ordered appellant to lie on the ground, and handcuffed him.  They found Scott Handleman's credit card, and a receipt for gas bought with the card, on the ground next to appellant's waist.  They also found latex gloves in his jacket pocket.  Sarna observed Laura Andersen's driver's license and social security card on the floorboard, and her credit card and ATM card under the passenger seat.  In addition, they found Scott Handleman's drivers' license and meal card, along with other people's cards, a black ski mask and more latex gloves.  When Sarna broadcast an inquiry about the property, Babka responded with the information that it had been stolen in the recently reported burglary.

Appellant called a San Quentin inmate, David Stocker, [footnote omitted] who testified that in March 1994, around 3:00 a.m., Sarna pulled him over for no reason.  Sarna then searched his vehicle and found a handgun and rock cocaine.  Sarna made some racist comments, and beat Stocker with a flashlight.  Sarna claimed that Stocker resisted arrest, but he had not.

Sarna testified that he stopped Stocker for driving without a seat belt, and when he approached the car, he observed an open beer between Stocker's legs.  Stocker had no license or identification, and ran when asked to exit the car.  A handgun fell to the ground when Sarna tackled Stocker, and Sarna hit him with the flashlight when Stocker attempted to move towards the gun.  Sarna denied making any racist comments.

**Possession of an Assault Weapon and Felon in Possession of a Firearm on July 19, 1994**

Sergeant Krupp and his partner, pursuant to a search warrant, went to the residence where appellant lived with his mother, Ella Randolph, and his grandmother, Maxine Lyons.  Ella Randolph showed them the second and third bedrooms.  The second bedroom was dusty and many items were stored on chairs and on the floor.  The third bedroom looked lived in, with men's clothes strewn all over.  In an armoire in the second bedroom, behind some men's clothing, the police found a Norinco 56S semiautomatic rifle, which an expert testified, is an assault weapon.  They also found some letters to various people, including appellant, on a nearby desk.

In the third bedroom, they found a case containing a pistol and unloaded ammunition magazines, and a Norinco pistol with two unloaded magazine clips.  These pistols were registered to Yvonne James, at a different address.  In a dresser they found two magazines with banana clips that fit the rifle, and a letter addressed to appellant.

In an adjoining laundry room the police found two stereos; one of which belonged to Laura Andersen; and in the music room they found Scott's backpack and three wine crates, one of which still held a few CD's.

**Felon in Possession of a Firearm on August 2, 1994**

On August 2, 1994, pursuant to a second search warrant, Sergeant Krupp returned and found, under the mattress, a handgun.  He also found another magazine for the Norinco Rifle in a desk drawer, and ammunition in the night table.  He found an envelope addressed to Yvonne James at that address, a letter to appellant from the municipal court, and the car registration for the Cadillac appellant had been driving when arrested.

**Owens Burglary and Receiving Stolen Property**

On September 17, 1995, at about five in the morning, a neighbor of Victor Owens heard noises, and saw a light on and a silhouette of a person carrying a bulky object toward the stairs.  She called the police to report the activity.  The person reappeared, entered the house again, and emerged in a few minutes carrying more items.  When the police arrived, they saw a keyboard on the ground, and heard rummaging noises from inside.  When appellant stepped out, carrying the keyboard, the officers confronted him and ultimately handcuffed him.  They found a tire iron and pry marks inside the residence, and in a nearby white Cadillac registered to appellant's grandmother, they found a keyboard, a bass guitar, and other music-related items.

Officer Mesones testified that while he was transporting appellant to the police station, appellant, without having been asked any question, told Mesones that he and some friends had paid Victor Owens gave the tape to one of appellant's friends.  Appellant was unable to get the tape from the friend, and demanded a refund from Owens.  Owens refused a refund, but offered him three free hours of recording time.  Appellant stated he went to the residence/recording studio "to break in, to steal the equipment, and to sell the equipment, so that he could get his money back and get even with" Owens.

Victor Owens testified that appellant, in April of 1995, had paid him $320 for a 10-hour block of recording time.  Owens kept the tape because appellant planned to return to finish the project.  A few months later, one of appellant's friends who had participated in the recording session asked for the tape, and eventually Owens gave it to him.  Appellant was angry that Owens released the tape to his friend, and asserted that Owens owed him something.  Ultimately, Owens offered some recording time, and appellant seemed to accept this offer.  One of the stolen keyboards was worth $1,000, and the other $1,800.  The bass was worth $2,000.

Answer, Ex. 10 (*People v. Randolph*, A084842, Aug. 9, 2000 Slip Op.) (hereinafter, "Slip Op.").

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in

**United States District Court**
For the Northern District of California

custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), so the provisions of that Act apply. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997); *Gratzer v. Mahoney*, 397 F.3d 686, 689 (9th Cir. 2005).

Under the AEDPA, a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2001), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, *i.e.*, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeal, rather than by a state trial court. *Sumner v.*

*Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *as amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do.  *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision.  *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  It also looks to any lower court decision examined and/or adopted by the highest state court to address the merits.  *See Williams v. Rhoades*, 354 F.3d 1101, 1106 (9th Cir. 2004) (because state appellate court examined and adopted some of the trial court's reasoning, the trial court's ruling is also relevant).  If the state court only considered state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law.  *See Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001). Where the state court reviews a Petitioner's federal claim on the merits but gives no reasoned explanation of its decision and there is no reasoned lower court decision on the claim, the district court applies the deferential standard of 28 U.S.C. § 2254(d) to the state court's determination but must review the record independently to decide whether the state court's decision was objectively reasonable.  *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

**<u>DISCUSSION</u>**

**I.     Ineffective Assistance of Trial Counsel**

A.     Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

adversarial process that the trial cannot be relied upon as having produced a just result. *Id.* The right to effective assistance counsel applies to the performance of both retained and appointed counsel without distinction. *See Cuyler v. Sullivan*, 446 U.S. 335, 344-45 (1980).

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must establish two things. First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

B.     Analysis

In the absence of a reasoned decision by a state court addressing Petitioner's ineffective assistance of trial counsel claim, the Court must conduct an independent review of the record to ascertain whether the state court denial of this claim was objectively unreasonable. *Himes*, 336 F.3d at 853.

1.     Handling of Motion to Suppress

On September 3, 1996, private attorney Thomas Broome was discharged as trial counsel. *See* Ans., Exs. 1A, 1B ("Cl. Tr.") at 98, 257-258; Ex. 4A (9/3/96 Tr.) at 5. On October 24, 1996, Petitioner's *Faretta* motion to represent himself was granted on all three dockets. *See* Cl. Tr. 272-273; Ans., Ex. 4B (10/24/96 Tr.) at 14. On January 2, 1997, private attorney Daniel Horowitz was appointed to represent Petitioner on all three dockets. Cl. Tr. 297-299.

Petitioner challenges Horowitz's handling of the May 13, 1997 motion to suppress evidence. Pet., Attachment at 1-6. First, Petitioner argues that his attorney cited a case which referred to facts about the reputation of an area for criminal activity, which the prosecution then argued in opposition to the motion to suppress. *Id.* at 3-4. An attorney's citation to legal authority does not, however, fall below an objective standard of reasonableness and does not rise to the level of ineffective assistance.

Second, Petitioner claims that his attorney erred by proceeding on the suppression hearing without having received the material requested in his *Pitchess* motion for police background

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

discovery. *Pitchess v. Superior Court*, 11 Cal.3d 531 (1974). The trial court granted Petitioner's motion to discover information relating to police misconduct in the personnel and Internal Affairs files of Officers Sarna and Mathison, who conducted the traffic stop on July 18, 1994. *See* CT 473. Petitioner argues that the *Pitchess* material was essential for impeachment purposes, where Petitioner claimed that "he was the subject of racial profiling - Driving While Black (DWB), and that the alleged traffic infraction was merely a pretext used to justify the warrantless search of petitioner's vehicle." Pet., Attachment at 6. On his decision not to re-open the suppression motion upon receiving the police personnel files, defense counsel explained during a *Marsden* hearing to substitute counsel that "there was nothing relevant uncovered in Pitches [sic]. And, in fact, having heard the 1538.5 [suppression motion], [the judge was in a better position to do an in-camera review [of the *Pitchess* material] favorable to us because we knew what we were getting at." Ans., Ex. 5B (11/4/97 Tr.) at 19-20.

The Court of Appeal found that defense counsel "apparently made a strategic choice not to pursue his charge of fabrication" against the police officer who conducted the traffic stop in a suppression hearing. Slip Op. at 16. The Court of Appeal also found that Petitioner "did introduce evidence of David Stocker's complaints about Officer Sarna at trial," which was discovered after the trial court granted the motion to discover *Pitchess* material. Slip Op. at 15. Stocker testified at trial that Officer Sarna pulled him over under the pretense of a traffic stop, and made racist remarks and beat Stocker with a flashlight. Ans., Ex. 2D (Trial Transcript, hereinafter, "Rep. Tr.") at 879-889.

A difference of opinion as to trial tactics does not constitute denial of effective assistance, *see United States v. Mayo*, 646 F.2d 369, 375 (9th Cir.), *cert. denied*, 454 U.S. 1127 (1981), and tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available. *See Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir.), *cert. denied*, 469 U.S. 838 (1984). Here, where defense counsel introduced evidence at trial of past complaints about racial profiling against Officer Sarna for impeachment purposes, Rep. Tr. 917-920, Petitioner has not demonstrated any prejudice from trial counsel's decision not to reopen the suppression motion, *i.e.*, that there is a reasonable probability that the outcome would have been different, as the evidence supported the state court's conclusion that the police had probable cause to believe Petitioner had

evaded a police vehicle in violation of California Vehicle Code § 2800.1.  Slip Op. at 7-8.  *See Williams v. Calderon*, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995).  Accordingly, habeas relief is not warranted on this claim.

2.　　　Failure to Investigate Destruction of Dispatch Tape

Petitioner claims that defense counsel failed to conduct an independent investigation of the destruction of the dispatch tape relating to Petitioner's stop and arrest.  Pet., Attachment at 7-16.  Petitioner denied running a stop sign, evading the police officers, or leading them on a high speed chase.  He claims that he wanted to use the dispatch tape to impeach the credibility of Officer Sarna.  The Superior Court issued an order to preserve the dispatch tape on October 18, 1994, Cl. Tr. 450, but in February 1995, after a private attorney was substituted in for the public defender's office, the police destroyed the tape by recording over it, and the transcript was routinely destroyed.  Slip Op. at 11.  According to the government, the tape was recycled after the public defender's investigator, J. Thurman, notified the police that it was not needed.  *Id.*

The defense was notified in early 1997 that the tape had been destroyed.  Pet., Attachment at 7 and n.1.  Defense counsel filed a motion to dismiss due to the failure to preserve and produce the dispatch tapes.  Cl. Tr. 309-313.  The Superior Court heard the matter on November 6, 1997, and denied the motion.  Ans., Ex. 2A (11/6/97 Rep. Tr.) at 49-60.  At the hearing on the motion to dismiss, the government argued that "[t]he officers who made the stop are going to be hearing subject to I'm sure extensive cross-examination their memory recall veracity can be tested in that regard.  The tape otherwise has no evidentiary value whatsoever in assisting Mr. Randolph presenting a defense."  *Id.* at 59.

Petitioner contends that his attorney did not follow his leads or investigate the status of the dispatch tape prior to the hearing on the motion to dismiss.  Pet., Attachment at 10-13.  The record indicates, however, that defense counsel did speak to Thurman, who did not recall telling the police that the tape could be destroyed.  11/6/97 Rep. Tr. 49.  The record thus indicates that defense counsel interviewed the public defender's investigator about the destruction of the tape.

A defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  *See Strickland*, 466 U.S. at

**United States District Court**
For the Northern District of California

691.  *Strickland* directs that "'a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'"  *Silva v. Woodford*, 279 F.3d 825, 836 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 691).  Where there are indicia of counsel's tactical reflection on the issue, judicial scrutiny of counsel's performance is deferential, with a presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *See United States v. Palomba*, 31 F.3d 1456, 1466 (9th Cir. 1994).

Here, Petitioner has not demonstrated a reasonable probability that but for defense counsel's failure to investigate, the result of the proceeding would have been different.  As the Court of Appeal held, "[t]he destruction of the tape did not preclude appellant from impeaching Sarna in a similar manner through the testimony of David Stocker, another alleged victim of Officer Sarna's misconduct."  Slip Op. at 12.  In addressing Petitioner's challenge to the denial of his motion to dismiss as a sanction for destruction of the dispatch tape, the Court of Appeal held that "[t]he mere 'possibility that the tape could have exculpated appellant if preserved is not enough' to establish that its exculpatory value was apparent when it was destroyed  [citing *Arizona v. Youngblood*, 488 U.S. 51, 56 (1988)].  The exculpatory value of the tape would not have been apparent, because appellant was prosecuted for burglary and weapons offenses, not the traffic violation or evasion of a police officer.  His theory of how the dispatch tape might even be *relevant* to the prosecution for burglaries and other offenses, unrelated to the circumstances of the stop, is based upon a series of speculative assumptions and inferences that the court reasonably concluded would not have been apparent when it was destroyed.  The court correctly concluded that the dispatch tape 'was simply an avenue of investigation that might have led in any number of directions.'"  Slip Op. at 12.

As Petitioner has not demonstrated prejudice from defense counsel's alleged failure to investigate the destruction of the dispatch tape, Petitioner is not entitled to habeas relief on this claim of ineffective assistance, nor the related claim, Claim XVII, which asserts the same grounds for habeas relief.

United States District Court
For the Northern District of California

3.      Misrepresentation of Plea Bargain Offer

Petitioner contends that his attorney misrepresented the government's plea offer by stating on August 14, 1997, that the offer was for "time served," and that the maximum sentence was fourteen years, when in fact the plea offer was seven years.  Pet., Attachment at 16-18 and Appendix D, Randolph Decl., ¶¶ 6, 11.  Petitioner claims that attorney Horowitz misrepresented and misadvised Petitioner about the plea offer and the maximum and minimum periods of confinement if the case proceeds to trial.  He complains that he was willing to accept a plea agreement as to one of the cases, Indictment No. 125811, but was not willing to plead guilty to charged crimes which he did not commit.  Pet., Attachment at 18.

The decision whether or not to accept a plea offer is a critical stage of the prosecution at which the Sixth Amendment right to counsel attaches.  *Turner v. Calderon*, 281 F.3d 851, 879 (9th Cir. 2002).  Therefore, the two-part test of *Strickland* applies to counsel's ineffective assistance in advising a defendant to accept or reject a plea offer.  *See Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985); *Nunes v. Mueller*, 350 F.3d 1045, 1051-53 (9th Cir. 2003).  Erroneous advice regarding the consequences of a guilty plea is insufficient to establish ineffective assistance; petitioner must establish a "'gross mischaracterization of the likely outcome' of a plea bargain 'combined with . . . erroneous advice on the probable effects of going to trial.'"  *Sophanthavong v. Palmateer*, 378 F.3d 859, 868 (9th Cir. 2004).  Failure to accurately convey the terms of a plea offer, coupled with evidence that the offer would have been accepted if accurately conveyed, is sufficient to show prejudice.  *Nunes*, 350 F.3d at 1054.

Here, the record indicates that upon addressing Petitioner's *Marsden* motion to substitute Mr. Horowitz as counsel, the Superior Court informed Petitioner "I appoint him to represent you because you are looking at a life sentence and you need a good lawyer."  Answer, Ex. 5A (5/9/97 Tr.) at 4.  At the time, Mr. Horowitz informed the court that Petitioner "was offered a great deal, doesn't want to take it and has a fantasy that his motions are going to get him out of this case."  *Id.*  At the November 4, 1997 *Marsden* hearing, Mr. Horowitz informed the court that "there was a four-year offer in Municipal Court in this case turned down.  That there was a seven-year offer in Superior Court that was kept open for ages. . . . Given the amount of time he has in custody, a reasonable

11

offer should be explored."  Ans., Ex. 5B (11/7/97 Tr.) at 20-21.  Mr. Horowitz also filed a declaration stating that Petitioner "turned down an offer (2 years I believe) which would have allowed him to be released with credit for time served."  Pet., App. E (Horowitz Decl.), ¶ 8.

The record belies Petitioner's claim that his attorney misrepresented plea offers.  Even after the November 4, 1997 hearing where the history of plea offers and defense counsel's advice to enter a plea agreement were made known to the court, Petitioner was offered a seven year plea on November 5, 1997, which he rejected.  *See* Pet., App. D (Randolph Decl.), ¶ 12.  Petitioner has not shown that his attorney grossly mischaracterized the likely outcome of the plea or of trial, and is not entitled to habeas relief on this claim.

### 4.    Failure to Interview Witnesses

Petitioner claims that defense counsel failed to adequately investigate and interview witnesses, such as Ms. Cagler, the woman with whom Petitioner resided, and Ms. James, the woman to whom two of the confiscated weapons were registered.  Pet., Attachment at 18-22.  The Superior Court, Judge Carl Morris, reheard Petitioner's *Marsden* motion on November 5, 1997, after Judge Joseph Jay set aside his November 4, 1997, denial of the motion and recused himself upon Petitioner's objection that Judge Jay's son, John Jay, had been the prosecutor in the case.  *See* Answer, Ex. 5C (11/5/97 Tr.) at 13.  At the November 5 hearing, Mr. Horowitz explained his efforts to follow Petitioner's leads: "The information he gave me regarding what his mother would say turned out not to be accurate.  His mother does not support his defense in the ways that he said.  He gave me the names of two women, ways to locate them, who might help him out.  None of that checked out.  However, Bob Cross, my investigator, did continue to pursue these women, did continue to contact Mr. Randolph and he probably has one of the witnesses, a women whose name to whom two of the guns that were found in the premise which Mr. Randolph's mother says was occupied by Mr. Randolph, she is registered to those guns, and try to locate her and see if she'll back Mr. Randolph in that respect."  *Id.* at 28-29.

As discussed earlier in Section I.B.2, *supra* at 10, defense counsel has a general duty to make reasonable investigations.   Here, the record belies Petitioner's contention that defense counsel failed to adequately investigate defense witnesses.

12

**United States District Court**
For the Northern District of California

Furthermore, although Petitioner argues that defense counsel failed to interview the governments' witnesses before trial, he offers no evidence of what counsel may have discovered or how the failure to interview these witnesses caused prejudice. *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000). The duty to investigate and prepare a defense does not require that every conceivable witness be interviewed. *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995). A claim of failure to interview a witness cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel. *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986). Here, several prosecution witnesses had testified in pretrial proceedings. At the grand jury proceedings on November 1, 1995, Victor Owens, Officer William Cocke, Officer Christine Knowlton and Leigh Ann Lombardo testified as to the Owens burglary and possession of stolen property charges, and later testified at trial. Cl. Tr. 150-176. *See* Rep. Tr. 689-742, 767-784, 785-795, 639-672. Furthermore, on July 17, 1997, Officer Sarna testified as to the traffic stop at the hearing on Petitioner's motion to suppress, and also testified at trial. Cl. Tr. 475-494. *See* Rep. Tr. 217-243. The general content of at least these witnesses' testimony was already available to defense counsel ahead of trial. Petitioner has not presented evidence that any of the prosecution witnesses would have provided helpful testimony for the defense, or otherwise shown how defense counsel's failure to interview the prosecution witnesses would have affected the outcome of his trial. Habeas relief is therefore not warranted on this claim.

The state court's denial of Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable interpretation of, established Supreme Court precedent. Petitioner's claim is therefore denied.

**II.   Irreconcilable Conflict**

A.   Legal Standard

The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is properly considered in federal habeas. *Bland v. California Dep't of Corrections*, 20 F.3d 1469, 1475 (9th Cir. 1994), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000) (en banc). The Sixth Amendment guarantee of assistance of counsel comprises two correlative rights: the right to counsel of reasonable competence, *McMann v. Richardson*, 397 U.S.

759, 770-71 (1970), and the right to counsel's undivided loyalty, *Wood v. Georgia*, 450 U.S. 261, 271-72 (1981).  A criminal defendant accordingly is entitled under the Sixth Amendment to an effective attorney who can represent him competently and without conflicting interests.  *Garcia v. Bunnell*, 33 F.3d 1193, 1195 (9th Cir. 1994).

The Ninth Circuit recognizes a conflict that can cause a Sixth Amendment violation when the attorney-client relationship has broken down beyond repair due to the defendant's objectively reasonable belief that his counsel has betrayed him, counsel ceases to "function in the active role of an advocate."  *Plumlee v. Sue del Papa*, 426 F.3d 1095, 1107 (9th Cir. 2005) (quoting *Entsminger v. Iowa*, 386 U.S. 748, 751 (1967)).

The Ninth Circuit has held that when a defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction.  *Id.* at 1475-76; *United States v. Robinson*, 913 F.2d 712, 716 (9th Cir. 1990); *Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir. 1982).[1]  The inquiry need only be as comprehensive as the circumstances reasonably would permit, however.  *King v. Rowland*, 977 F.2d 1354, 1357 (9th Cir. 1992) (record may demonstrate that extensive inquiry was not necessary).

B.    Analysis

Petitioner complains that defense counsel Horowitz was not acting in the best interest of his client, and that Petitioner was denied effective assistance of counsel.  Pet., Attachment at 23-39. Petitioner cites as evidence of irreconcilable conflict the fact that Mr. Horowitz did not oppose the assignment of the consolidated cases to Judge Joseph Jay, who was the father of the former prosecutor, Deputy District Attorney John Jay.  *Id.* at 27.  Petitioner suspected that Mr. Horowitz was colluding with the government to deprive him of a fair trial, and amended his second *Marsden* motion to raise this issue after Judge Jay recused himself and set aside his November 4, 1997 ruling on the *Marsden* motion.  *Id.* at 34.  *See* Ans., Ex. 5C (11/5/97 Tr.) at 22.

At the November 5, 1997 hearing on Petitioner's *Marsden* motion, Mr. Horowitz addressed

---

[1]    *People v. Marsden*, 2 Cal. 3d 118 (1970), requires the trial court to permit a criminal defendant requesting substitution of counsel to specify the reasons for his request and generally to hold a hearing. This California rule substantially parallels the one prescribed by the Ninth Circuit in *Hudson v. Rushen*. *See Chavez v. Pulley*, 623 F. Supp. 672, 687 n.8 (E.D. Cal. 1985).

14

**United States District Court**
For the Northern District of California

his non-opposition to Judge Jay's assignment: "In terms of Judge Jay hearing this case, I don't see any conflict with what John Jay did and Judge Jay hearing the case, but I will say this: I know Judge Jay. I know his judicial philosophy and how he runs his courtroom. I have done two trials in front of him in the last few years. I think that one thing you can say about Judge Jay is that he lets the defense try their case. And I think he gives more leeway in terms of what defense evidence can come in than most judges do. The Victor Owens case, particularly, . . . [t]here are cases that indicate that a liquidated debt can be resolved by self-help to the extent not that it's permissible to do it, but it could defeat specific intent. However, as to an unliquidated debt it's very unlikely. I thought that Judge Jay would be a very good judge for letting this defense in as opposed to many other judges. And in fact, in chambers when we discussed this issue. Judge Jay did indicate that he was going to let us put on our defense which is, I thought, quite remarkably good. So I thought there was – I as [sic] very happy to have Judge Jay in that respect." *Id.* at 29-30.

Petitioner's conflict with his attorney over Judge Jay's assignment to the case arose out of a dispute over counsel's tactical choices, and does not amount to an "obvious and extreme conflict that constructively deprived" Petitioner of meaningful representation. *Plumlee*, 426 F.3d at 1107. *See Schell*, 218 F.3d at 1026 & n.8 (attorney may make tactical trial decisions despite client's disapproval). Petitioner had an opportunity to raise his ineffective assistance arguments before the trial court, which held that "I have listened carefully, and I must tell you that I am satisfied with Mr. Horowitz, his statements of his activity. And I don't see any basis at this time to declare that he has rendered ineffective assistance, to order his removal, to substitute other counsel." Ans., Ex. 5C at 37-38.

Petitioner has not shown that the conflict between himself and Mr. Horowitz prevented effective assistance of counsel. The trial court was satisfied with Mr. Horowitz's explanations as to discovery, various pretrial motions and other trial strategies. *See id.* at 25-33. The state court's denial of Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable interpretation of, established Supreme Court precedent. Petitioner's claim is therefore denied.

*//*

*//*

**United States District Court**
For the Northern District of California

**III.    Due Process: Failure to Transcribe Hearing**

A.    Legal Standard

A trial court's failure to make a record of portions of the trial, for instance voir dire, opening statements and closing arguments, bench conferences, the jury charge, or the jury poll, may violate due process if the record is such that the defendant cannot effectively appeal. *Madera v. Risley*, 885 F.2d 646, 648 (9th Cir. 1989). In *Madera*, the court adopted two criteria as relevant to determination of the need for the missing record: (1) the value of the transcript to the defendant; and (2) the availability of alternative devices which would fulfill the same function. *Madera*, 885 F.2d at 648 (quoting *Britt v. North Carolina*, 404 U.S. 226, 227 (1971)). A habeas petitioner also must establish prejudice from the lack of recordation to be entitled to habeas corpus relief. *Id.* at 649.

B.    Analysis

Petitioner claims that the court reporter failed to transcribe a February 11, 1997 hearing on Mr. Horowitz's motion to withdraw, and also failed to provide a transcript for the May 9, 1997 hearing on his *Marsden* motion. Pet., Attachment at 40-47. The government, however, explains that defense counsel's motion to withdraw was continued until May 9, 1997, when Petitioner's motion to substitute counsel was heard. Ans. at 14-15. The transcript of the May 9, 1997 hearing has been lodged and marked as Exhibit 5A.

Petitioner does not further address this failure to transcribe claim in his traverse. He does, however, refer to a November 5 and/or 6, 1997 settlement conference in chambers which was not transcribed. 2/8/05 Pet. Decl. in Resp. to Answer, ¶ 2, 9-12. Petitioner complains that the court reporter failed to record the settlement conference. *Id.*, ¶ 13. As no plea agreement was reached, however, there was no settlement or agreement to be entered on the record. As other evidence of the seven-year plea offer has been submitted, *see* Answer, Ex. 5B at 20-21 (11/7/97 Tr.)*,* Petitioner has not been prejudiced in his ability to raise this issue on appeal or in habeas proceedings in violation of his due process rights. *Madera*, 885 F.2d at 648.

As Petitioner has not shown that the trial court failed to make a record of the hearings and other pretrial proceedings, Petitioner is not entitled to habeas relief on this claim.

*//*

United States District Court
For the Northern District of California

**IV.    Failure to Conduct *Marsden* Hearing on Motion to Substitute Attorney Broome**

A.    Legal Standard

As set forth in Section II.A, *supra* at 13-14, the denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel. *Bland*, 20 F.3d at 1475.

B.    Analysis

Petitioner claims that the trial court failed to review the record of attorney Thomas Broome's representation and to inquire into counsel's appointed status in order to entitle Petitioner to substitution of appointed counsel. Pet., Attachment at 48-55. Petitioner claims that when the court failed to conduct a hearing on his *Marsden* motion, and discharged Broome as counsel without appointing a new attorney, Petitioner was left without representation. *Id*. at 51.

The record, however, indicates that the trial court heard Petitioner on his motion to fire Mr. Broome on September 3, 1996, and made him aware of the resulting self-representation. Ans., Ex. 4A (9/3/96 Tr.) at 1-5. At the hearing, the court clarified that if Mr. Broome was retained, rather than appointed, "it is not a *Marsden* motion. If he wants to fire you, he can fire you." *Id*. at 3. The court also told Petitioner "you don't have to have a reason to fire somebody you are paying." *Id.* Petitioner then asked the court, "That means I can go pro per?" To which the court replied, "You can do that or I can refer you to the Public Defender's Office." *Id.*

Petitioner presented his argument to the trial court that Mr. Broome was appointed, and that he was properly the subject of a *Marsden* motion to substitute counsel:

> THE DEFENDANT:  Okay. In regards to the Marsden motion, even though I did retain Mr. Broome, Mr. Broome was appointed by this court.
>
> THE COURT:    No. Mr. Broome says he wasn't. Doesn't make any difference. If you want to fire him, as far as I am concerned he says he was retained, and if you want to fire him he is fired. You paid  money and he is sitting here nodding his head yes, and he is of the opinion he was retained on both of these cases, one officially and the second one out of the kindness of his heart, I guess, and he doesn't represent you on the other one so you have the right to fire whoever you hire.

17

THE DEFENDANT:   So what about the Ferrata [sic] motion, I have to file that to go pro

per?

THE COURT:   I will notice it for a different date and time, but if you want to litigate a

Ferrata [sic] motion I will let you do that.

. . . Show Mr. Broome is no longer the attorney of record.  And I

assume, Mr. Randolph, by filing the Marsden motion that it was your

intention to not have Mr. Broome represent you anymore; is that right?

THE DEFENDANT:   Exactly.

*Id.* at 4-5.

The record demonstrates that Petitioner's waiver of counsel was voluntary, and that he willingly proceeded pro se.  On October 24, 1996, his *Faretta* motion was granted on all three dockets.  Cl. Tr. 272-273.  Petitioner was not forced into a situation of choosing between incompetent counsel and no counsel at all.  *Cf. Crandell v. Bunnell*, 144 F.3d 1213, 1215-18 (9th Cir. 1998), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000) (en banc).  Rather, he chose to fire his attorney, Broome, and proceed pro se after obtaining leave from the trial court to file a *Faretta* motion for self-representation.  Petitioner is not entitled to habeas relief on these grounds.

**V.     Prosecutorial Misconduct**

A.     Legal Standard

Prosecutorial misconduct is cognizable in federal habeas corpus.  The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power.  *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair."  *See id.; Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").  The appropriate standard on federal habeas corpus review of a state conviction for determining whether a constitutional error of the trial type is harmless is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.  *Brecht v. Abrahamson,* 507 U.S. 619, 637-38

(1993).

B.     Analysis

1.     Suppression of Evidence: Dispatch Tape

In Claims V and XVI, Petitioner suggests that the prosecutor withheld or concealed the dispatch tape which was subject to an October 18, 1994 court order for the preservation of dispatch cards and recordings by the Oakland Police Department relating to Petitioner's traffic stop and arrest on July 18, 1994. Pet., Attachment at 56-70 and 181-189. *See* Cl. Tr. 450. At a December 27, 1996 hearing, Petitioner asked for the results of the dispatch preservation order, which the prosecutor did not have. Ans., Ex. 2A (12/27/96 Tr.) at 4-7. It was later disclosed to Petitioner that the dispatch tape had been destroyed, which was the subject of a motion to dismiss.

If a defendant so requests, the government has an obligation to surrender favorable evidence that is "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *See United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985) (plurality opinion); *accord id.* at 685 (White, J., concurring).

The Court of Appeal upheld the trial court's denial of Petitioner's motion to dismiss for the destruction of the dispatch tape. Slip Op. at 11-12. Citing *California v. Trombetta*, 467 U.S. 479 (1984), the appellate court held that Petitioner had not demonstrated that the tape possessed "'exculpatory value that was apparent before the evidence was destroyed,'" or that it was "'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" Slip Op. at 11. "'Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' [*Trombetta*, 467 U.S. at 489.] More recently, the high court held that 'unless a

19

**United States District Court**
For the Northern District of California

1   criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful

2   evidence does not constitute a denial of due process of law.' *Arizona v. Youngblood*, 488 U.S. 51,

3   58 (1988)." Slip Op. at 11 (citing *People v. Webb*, 6 Cal. 4th 494, 519 (1993)).

4        Petitioner has presented no evidence that the prosecution lied to the trial court about the

5   preservation order, which was part of the record, or about the dispatch tape, a copy of which he did

6   not have. *See* Ans., Ex. 2A (12/27/96 Tr.) at 4-7. Having presented no evidence of the content of

7   the tape, Petitioner suggests that the tape "was material evidence to the extent that it goes directly to

8   the crucial point of probable cause, where arresting officers Pete Sarna and Mathison falsely alleged

9   and fabricated numerous traffic infractions as a pretext in justifying the warrantless and unlawful

10  search of petitioner's vehicle." Pet., Attachment at 60. Even if the destroyed tape did contain such

11  evidence, Petitioner did not suffer prejudice because he had the opportunity at trial to present

12  impeachment evidence through Stocker's testimony about racial profiling and to cross-examine

13  Officers Sarna and Mathison.

14       The Court of Appeal further noted that the exculpatory value of the tape would not have been

15  apparent when it was destroyed because Petitioner was prosecuted for burglary and weapons

16  offenses, not for traffic violation or evasion of a police officer. Slip Op. at 12. *See* Section I.B.2,

17  *supra* at 9-10. Finally, Petitioner has not shown how the destruction of the tape "had a substantial

18  and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

19       The state court's denial of Petitioner's due process claim for suppression of evidence was

20  neither contrary to, nor involved an unreasonable application of, clearly established Federal law.

21  Habeas relief is not warranted here.

22          2.     Attempt to Have Father of Prior Prosecutor Preside Over Trial

23       Petitioner claims that the prosecution committed misconduct in attempting to have Judge Jay

24  preside over his trial, though Judge Jay's son had been the prosecutor. Pet., Attachment at 70-74.

25  After Petitioner objected to Judge Jay's hearing the case, Ans., Ex. 5B (11/4/97 Tr.) at 33-34, Judge

26  Jay recused himself and set aside his ruling on Petitioner's *Marsden* motion, which was heard and

27  denied the following day by a different judge. Ans., Ex. 5C at 37-38. As Judge Jay immediately

28  recused himself, his brief assignment to Petitioner's case did not render his trial "fundamentally

**United States District Court**
For the Northern District of California

1   unfair."  As even Judge Jay's *Marsden* ruling was withdrawn, Petitioner did not suffer any

2   substantial or injurious effect on his trial, and suffered no due process violation.  This claim

3   therefore does not merit habeas relief.

3.      Filing Unsustainable Weapon Charges

5   Petitioner also claims that the prosecution filed weapons charges under Penal Code section

6   12021 that were not sustainable by the evidence.  Pet., Attachment at 75-81.  He claims that the

7   prosecutor used the weapons charge to elicit evidence about assault weapons and drum up the jury's

8   fears.  The prosecutor, however, has broad discretion in making charging decisions, unless Petitioner

9   can show that the charging decision rested on an impermissible basis such as gender, race, or denial

10  of a constitutional right.  *United States v. Palmer*, 3 F.3d 300, 305 (9th Cir. 1993).  Here, Petitioner's

11  alleged conduct violated the Penal Code prohibiting possession of assault weapons.  *See* Section

12  VI.B.2, *infra* at 23-24.  Petitioner has failed to show that the decision to prosecute him for weapon

13  possession was based on a constitutionally impermissible factor.  *Palmer*, 3 F.3d at 305.  Habeas

14  relief is therefore not warranted here.

15  **VI.    Insufficiency of Evidence**

16  A.      Legal Standard

17  The Due Process Clause "protects the accused against conviction except upon proof beyond a

18  reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re*

19  *Winship*, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the evidence in support of his

20  state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find

21  guilt beyond a reasonable doubt therefore states a constitutional claim, *see Jackson v. Virginia*, 443

22  U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *id.* at 324.  *See also*

23  *Wigglesworth v. Oregon*, 49 F.3d 578, 582 (9th Cir. 1995) (writ granted where Oregon procedure of

24  allowing lab reports regarding drug analyses to be admitted into evidence without authenticating

25  testimony relieved state of its burden to prove beyond reasonable doubt all elements of crime

26  charged); *Martineau v. Angelone*, 25 F.3d 734, 739-43 (9th Cir. 1994) (writ granted where evidence

27  found insufficient to convict defendants of child abuse based on delay in seeking medical care for

28  child).

**United States District Court**
For the Northern District of California

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), *cert. denied*, 510 US 843 (1993).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *See id.* (quoting *Jackson*, 443 U.S. at 319).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted.  *See Jackson*, 443 U.S. at 324.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Jackson*, 443 U.S. at 326.  A jury's credibility determinations are therefore entitled to near-total deference.  *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional of circumstances, *Jackson* does not permit a federal habeas court to revisit credibility determinations.  *See id.* (credibility contest between victim alleging sexual molestation and defendant vehemently denying allegations of wrong doing not a basis for revisiting jury's obvious credibility determination); *see also People of the Territory of Guam v. McGravey*, 14 F.3d 1344, 1346-47 (9th Cir. 1994) (upholding conviction for sexual molestation based entirely on uncorroborated testimony of victim).

The prosecution need not affirmatively rule out every hypothesis except that of guilt.  *Wright v. West*, 505 U.S. 277, 296-97 (1992) (quoting *Jackson*, 443 U.S. at 326); *see, e.g., Davis v. Woodford*, 384 F.3d 628, 639-41 (9th Cir. 2004) (finding sufficient evidence of premeditation).   The existence of some small doubt based on an unsupported yet unrebutted hypothesis of innocence therefore is not sufficient to invalidate an otherwise legitimate conviction.  *See Taylor v. Stainer*, 31 F.3d 907, 910 (9th Cir. 1994) (three hypotheses regarding petitioner's fingerprints which government failed to rebut unsupported by evidence and therefore insufficient to invalidate conviction).

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction.  *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995).  Mere suspicion and speculation cannot support logical inferences, however.  *Id.; see, e.g., Juan H. v. Allen*, 408 F.3d 1262, 1278-79 (9th Cir. 2005) (granting writ where, after resolving all conflicting factual inferences

in favor of prosecution, only speculation supported petitioner's conviction for first degree murder under a theory of aiding and abetting).

B.     Analysis

In the absence of a reasoned decision by a state court addressing Petitioner's insufficiency of evidence claim, the Court must conduct an independent review of the record to ascertain whether the state court denial of this claim was objectively unreasonable. *Himes*, 336 F.3d at 853.

1.     Sufficiency of Evidence on First Degree Burglary

Petitioner raises challenges to the sufficiency of evidence to sustain his conviction of first degree burglary of the Handelman/Anderson residence. Pet., Attachment at 85-89. Petitioner claims that the prosecution failed to produce any physical evidence or eyewitness testimony to prove that Petitioner entered the residence in violation of California Penal Code section 459.

The record shows that several hours after the victims reported the burglary, Petitioner was stopped for a traffic violation and that the police officers found in his car many of the items reported missing, such as Andersen's driver's license, social security card, and ATM card, as well as a full-face ski mask and latex rubber gloves. Rep. Tr. 218-222, 233-234, 236-237, 240, 284-285, 295-296, 302-303. Furthermore, Petitioner's residence was searched the next day, where additional items such as CDs and portable stereo, were found. Rep. Tr. 169, 423-425.

Drawing logical inferences from this evidence, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Habeas relief is therefore denied on this claim.

2.     Weapon Possession

Petitioner also claims that there was insufficient evidence to convict him of possessing an assault weapon pursuant to Penal Code § 12280(b) and being a felon in possession of weapons charges pursuant to Penal Code § 12021. Pet., Attachment at 90-98. Specifically, Petitioner claims that two of the guns were registered to his girlfriend, Ms. James, who recently lived with him. Rep. Tr. 434-35, 455, 599. Petitioner argues that he should not have been charged with constructive possession of firearms that were in the actual possession of the legally registered owner. Pet., Attachment at 91.

United States District Court
For the Northern District of California

1    The trial court instructed the jury that it could find either actual or constructive possession of

2    the firearms in violation of Section 12021: "The law recognizes two kinds of possession: actual

3    possession and constructive possession.  Actual possession requires that a person exercise direct

4    physical control over a thing.  Constructive possession does not require actual possession but does

5    require that a person knowingly exercise control or the right to control a thing, either directly or

6    through another person or persons."  Rep. Tr. 1121.  The court similarly instructed the jury as to

7    possession of an assault weapon in violation of Section 12280.  Rep. Tr. 1121-1122.

8    "Inferences and presumptions are a staple of our adversary system of factfinding.  It is often

9    necessary for the trier or fact to determine the existence of an element of the crime – that is, an

10    'ultimate' or 'elemental' fact – from the existence of one or more 'evidentiary' or 'basic' facts."

11    *County Court of Ulster County v. Allen*, 442 U.S. 140, 156 (1979).  In light of the evidence that the

12    semiautomatic rifle was found in one of the bedrooms used by Petitioner, the jury could reasonably

13    conclude that he was in constructive possession of the assault weapon in violation of Section

14    12280(b).  *See* Rep. Tr. 385, 390-404, 484-499, 583-590.  The jury could also reasonably find that

15    Petitioner was in constructive possession of firearms from the evidence that the police found a pistol

16    and semiautomatic handgun in the other bedroom used by Petitioner.  *See* Rep. Tr. 404-414, 416-

17    420, 505-510, 587-588, 910-912.

18    The evidence presented at trial was sufficient for a rational juror to infer that Petitioner

19    knowingly exercised control or the right to control the weapons, either directly or through another

20    person.  The Supreme Court has recognized the reasonableness of the connection between

21    possession of a weapon and the occupancy of the room where it is kept: "'Persons who occupy a

22    room, who either reside in it or use it in the conduct and operation of a business . . . normally know

23    what is in it; and, certainly, when the object is as large and uncommon as a machine gun, it is neither

24    unreasonable nor unfair to presume that the room's occupants are aware of its presence.'"  *Ulster*

25    *County*, 442 U.S. at 165 n.27 (quoting *People v. Terra*, 303 N.Y. 332, 335-336 (1951)) (addressing

26    statutory presumption under state law that occupants of room where firearm was located possessed

27    the weapon).

28    Petitioner has not shown that the evidence at trial was insufficient to have led a rational trier

24

**United States District Court**
For the Northern District of California

of fact to find guilt beyond a reasonable doubt.  Habeas relief is therefore denied on this claim.

**VII.    Motion to Disqualify Judge Morris**

Petitioner claims that he was denied due process by the denial of his motion to disqualify Judge Morris.  This claim does not merit habeas relief.

A.    Legal Standard

The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge. *See In re Murchison*, 349 U.S. 133, 136 (1955).   In some cases, the proceedings and surrounding circumstances may demonstrate actual bias on the part of the judge, *i.e.,* improper conduct.  *See Taylor v. Hayes*, 418 U.S. 488, 501-04 (1974).  In other cases, the judge's pecuniary or personal interest in the outcome of the proceedings may create an appearance of partiality that violates due process, *i.e.,* improper influences.  *See Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995).  "Of course, most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor [*viz.*, a fair trial in a fair tribunal], not a minimum standard." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  "Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar.  [Citations omitted.]  But the floor established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Id.* at 904-905 (citing *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)).

B.    Analysis

Petitioner claims that Judge Morris should not have presided over his trial because Judge Morris had previously presided over pretrial proceedings and had not been appointed and assigned to the case "for all purpose."  Pet., Attachment at 99-115.  The technicality of designating a trial judge as "all purpose" is not determinative of Petitioner's constitutional right to a fair, unbiased trial.  The fact that Judge Morris had presided over pretrial proceedings does not establish that he was biased against Petitioner or had an interest in the outcome of the case.  Judges do not demonstrate "bias" or "prejudice" by forming opinions as a result of what they learned in earlier proceedings.  "It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and

**United States District Court**
For the Northern District of California

to sit in successive trials involving the same defendant."   *Liteky v. United States*, 510 U.S. 540, 551 (1994).

Petitioner also argues that Judge Morris demonstrated partiality for the prosecution by allowing it to present extensive testimony about the destruction of missing evidence, but denying the defense the opportunity to elicit testimony about the destruction of the dispatch tape.  Pet., Attachment at 106-107.  Sergeant Ronald Gunar testified at trial as to the procedures of the police department's property and evidence division, and as to specific evidence that was seized in connection with Petitioner's arrest and then submitted to the property room.  *See* Rep. Tr. 318-354. Sergeant Gunar also testified as to evidence that was inadvertently destroyed, including ATM or bank cards, a black ski mask, three pairs of white latex rubber gloves, two magazine clips.  *Id.* at 342-354.  Defense counsel had ample opportunity to cross-examine Sergeant Gunar on the destruction of evidence.  *Id.* at 354-373.  The trial judge's decision to allow testimony about the destruction of evidence neither demonstrates actual bias nor reflects improper influences so as to render the trial fundamentally unfair.  *See Liteky, supra*, 510 U.S. at 555 ("Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

Petitioner contends that Judge Morris should have been automatically disqualified for failing to respond timely to Petitioner's challenge for cause pursuant to section 170.1 of the California Code of Civil Procedure.  *See* Cl. Tr. 852-863.  The record reflects, however, that Judge Morris transferred the motion to disqualify to Department One (*id.* at 915), and that Judge Sarkisian denied Petitioner's motion.  *Id.* at 915, 916.  *See also* Rep. Tr. 1238-1239.  Furthermore, on a petition for federal habeas relief, Petitioner must demonstrate constitutional grounds for disqualification.  *See Bracy v. Gramley, supra*, 520 U.S. at 904.  Failing to do so, Petitioner is not entitled to habeas relief on this claim.

**VIII.   Failure to Conduct Hearing on Final *Marsden* Motion**

A.      Legal Standard

As set forth in Section II.A, *supra* at 13-14, the denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel.  *Bland*, 20 F.3d at 1475.

B.      Analysis

26

Petitioner claims that the trial court erred by failing to hear his motion to substitute counsel at sentencing on March 27, 1998. Pet., Attachment at 116-119. *See* Cl. Tr. 929-958. The record reflects that Petitioner refused to have Judge Morris hear the *Marsden* motion, arguing that Judge Morris had been disqualified by failing to respond to Petitioner's motion to disqualify, discussed in Section VII, *supra* at 25-26. *See* Rep. Tr. 1241-1242. In the motion to substitute counsel, Petitioner argued, among other things, that Mr. Horowitz failed to produce Ms. James and Ms. Cagler as witnesses. *See* Cl. Tr. 929-946. As discussed in Section I.B.4, *supra* at 12-13, Petitioner has not demonstrated that he was denied effective assistance of counsel because of Mr. Horowitz' alleged failure to investigate defense witnesses. No error resulted, therefore, from the trial court's failure to hear Petitioner's *Marsden* motion, which, at any rate, was due to Petitioner's own waiver of the hearing. Habeas relief on this claim is therefore denied.

## IX.     Destruction of Dispatch Tape

Petitioner raises several claims related to the government's destruction of the police dispatch tape: error in excluding evidence and failing to instruct the jury (Claims IX and XVIII); denial of due process (Claims V and XVI, discussed in Section V.B.1, *supra* at 18-20); ineffective assistance of counsel (Claims I and XVII, discussed in Section I.B.2, *supra* at 9-10).

A.     Failure to Instruct on Defense Theory of Case: Legal Standard

A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceedings. *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. *See id.* Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 745 (9th Cir. 1995). After all, due process does not require that an instruction be given unless the evidence supports it. *See Hopper v. Evans*, 456 U.S. 605, 611 (1982); *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005); *Miller v. Stagner*, 757 F.2d 988, 993 (9th Cir.), *amended*, 768 F.2d 1090 (9th Cir. 1985), *cert. denied*, 475 U.S. 1048 (1986).

An examination of the record is required to see precisely what was given and what was refused and whether the given instructions adequately embodied the defendant's theory. *See United*

27

*States v. Tsinnijinnie,* 601 F.2d 1035, 1040 (9th Cir. 1979). In other words, it allows a determination of whether what was given was so prejudicial as to infect the entire trial and so deny due process. *Id.*

The omission of an instruction is less likely to be prejudicial than a misstatement of the law. *See Walker v. Endell*, 850 F.2d 470, 475-76 (9th Cir. 1987) (citing *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'" *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson*, 431 U.S. at 155). The significance of the omission of such an instruction may be evaluated by comparison with the instructions that were given. *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001) (quoting *Henderson*, 431 U.S. at 156).

It is well established that a criminal defendant is entitled to adequate instructions on the defense theory of the case. *See Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000) (error to deny defendant's request for instruction on simple kidnaping where such instruction was supported by the evidence). Failure to instruct on the theory of defense violates due process if "'the theory is legally sound and evidence in the case makes it applicable.'" *Clark v. Brown*, 442 F.3d 708, 714 (9th Cir. 2006) (quoting *Beardslee v. Woodford*, 358 F.3d 560, 577 (9th Cir. 2004)), amended by --- F.3d. ---, 2006 WL 1462274 (9th Cir., May 30, 2006). However, the defendant is not entitled to have jury instructions raised in his or her precise terms where the given instructions adequately embody the defense theory, *United States v. Del Muro*, 87 F.3d 1078, 1081 (9th Cir. 1996); *Tsinnijinnie*, 601 F.2d at 1040, nor to an instruction embodying the defense theory if the evidence does not support it, *Menendez*, 422 F.3d at 1029.

B.      Analysis

In Claims IX and XVIII, Petitioner contends that the trial court erred in not instructing the jury about the destruction of the dispatch tape to support his theory of racial profiling. Pet., Attachment at 120-123 and 192-197. The Court of Appeal held that the trial court properly excluded evidence of the tape destruction, and properly refused to instruct the jury as to the tape destruction:

> Appellant argues that, even if the tape were accidentally destroyed, the testimony regarding defense efforts to obtain the tape would have helped avoid the adverse inference the jury might draw if it believed the defense had made no such effort. The court did not abuse its discretion, under Evidence Code section 352, by excluding this evidence on the grounds that it

was collateral and not "particularly probative of anything." The possibility that the jury would draw an adverse inference from the failure of the defense to introduce the tape was remote, especially in light of Officer Krupp's testimony that such tapes are routinely destroyed within four months. Moreover, as the trial court pointed out, in the absence of some evidence that the contents of the dispatch tape would have supported appellant's contention that Sarna had no basis for stopping him, the offered testimony was not valuable as impeachment of Sarna. Instead, at best, it was relevant only to a purely collateral issue, i.e., that the defense did try to obtain the tape, but it was accidentally destroyed. The court reasonably concluded that it was too time consuming to allow two witnesses to testify on this subject in light of its marginal probative value on a collateral issue. (Evid. Code § 352.)

Appellant's contention that the court erred by refusing to fashion an instruction based upon Evidence Code section 413 and CALJIC No. 2.06 fails for the simple reason that *no evidence* had been submitted to the jury that the police had willfully destroyed the tape. It is not error to refuse an instruction not supported by the evidence. [Citation omitted.]

Slip Op. at 13-14.

Looking to the record, defense counsel was permitted to argue that physical evidence, such as the latex gloves and the ski mask, had been conveniently and selectively destroyed to get rid of potentially exculpatory evidence. Rep. Tr. 1037-1038. Defense counsel also suggested in closing argument that Officer Sarna did not see Petitioner run the stop sign before pulling him over in the traffic stop. *Id.* at 1039-1040. Although the jury was not given an instruction on racial profiling, Petitioner was able to present his theory to the jury. Furthermore, Petitioner did not propose a specific jury instruction as to racial profiling, or as to the absence of a dispatch tape. *See* Cl. Tr. 682-694 (Defendant's Proposed Jury Instructions) and 722-726 (Defendant's Additional Requested CALJIC & Special Instructions)).

Thus, the trial court's exclusion of evidence of the dispatch tape did not infect the entire trial so as to deny due process; as the Court of Appeal found, the destruction of the tape was, at most, a collateral issue, with no evidence to suggest that the contents of the dispatch tape would support Petitioner's contention that Officer Sarna had no basis for stopping him. At trial, Petitioner took the opportunity to impeach Officer Sarna and argue police misconduct to the jury. As no prejudicial error resulted from the absence of Petitioner's proposed jury instruction, habeas relief is denied.

## X.    Newly Discovered Evidence Re: Racial Profiling and Prosecutorial Misconduct

### A.    Legal Standard

The mere existence of newly discovered evidence relevant to guilt is not grounds for federal

29

1  habeas relief. *Gordon v. Duran*, 895 F.2d 610, 614 (9th Cir.1990).  "Claims of actual innocence

2  based on newly discovered evidence have never been held to state a ground for federal habeas relief

3  absent an independent constitutional violation occurring in the underlying state criminal

4  proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  Petitioner must show that the newly

5  discovered evidence probably would have resulted in his acquittal.  *Gordon*, 895 F.2d at 614-615;

6  *Quigg v. Crist*, 616 F.2d 1107, 1112 (9th Cir. 1980); *Jeffries v. Blodgett*, 5 F.3d 1180, 1187-88 (9th

7  Cir. 1993).

8          **B.**       Analysis

9        In Claim X, Petitioner refers to studies and reports about accusations of racial profiling

10  against the Oakland Police Department.  Apart from such "newly discovered evidence," however,

11  Petitioner offers no independent constitutional basis for seeking federal habeas relief.  Petitioner

12  does not show, for example, how the Oakland Police data would probably produce an acquittal.

13  Petitioner already had the opportunity to present impeachment evidence against Officer Sarna and

14  argued police misconduct in closing argument.

15        In Claim XI, Petitioner offers newly discovered evidence that Deputy District Attorney John

16  Jay procured false testimony in an unrelated capital murder trial.  Pet., Attachment at 136-145.

17  Petitioner does not demonstrate, however, that such evidence would probably result in his own

18  acquittal.

19        Habeas relief is therefore denied as to these claims.

20  **XI.**     **Ineffective Assistance of Appellate Counsel**

21          **A.**       Legal Standard

22        The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the

23  effective assistance of counsel on his first appeal as of right.  *See Evitts v. Lucey*, 469 U.S. 387, 391-

24  405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to the

25  standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984); *Miller v. Keeney*, 882 F.2d 1428,

26  1433 (9th Cir. 1989); *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir. 1986).  A defendant

27  therefore must show that counsel's advice fell below an objective standard of reasonableness and that

28  there is a reasonable probability that, but for counsel's unprofessional errors, he would have

prevailed on appeal. *Miller*, 882 F.2d at 1434 & n.9 (citing *Strickland*, 466 U.S. at 688, 694; *Birtle*, 792 F.2d at 849).

It is important to note that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997); *Miller*, 882 F.2d at 1434 n.10. The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *See Miller*, 882 F.2d at 1434 (footnote and citations omitted). Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason--because he declined to raise a weak issue. *See id.*

B.      Analysis

In Claim XII, Petitioner claims that his appellate counsel, Carol Strickman, failed to raise challenges based on ineffective assistance of trial counsel and to obtain transcripts of hearings held on February 11, 1997 and May 9, 1997. Pet., Attachment at 146-163. As to the transcripts, Petitioner admits that Ms. Strickman filed an application to augment the record, but the court reporter certified that no hearings were held that day. *Id.* at 147-148. Though unsuccessful in obtaining transcripts, Ms. Strickman's efforts to obtain them, as alleged by Petitioner, do not demonstrate unprofessional errors. As to the failure to raise issues on appeal, the only ineffective assistance claim raised on appeal was based on trial counsel's failure to obtain the police dispatch tape. Ans., Ex. 8 (Appellant's Opening Brief at 46-48). Although Ms. Strickman did not raise on appeal several ineffective assistance claims raised here by Petitioner, such as trial counsel's failure to call defense witnesses, failure to investigate and prepare for trial, and misrepresentation of the proffered plea bargain, those claims are without merit, as discussed in Section I, *supra* at 7-13. An appellate lawyer's failure to raise a meritless claim is neither unreasonable nor prejudicial. *See Miller v. Keeney*, 882 F.2d at 1434. Accordingly, Petitioner did not receive ineffective assistance of appellate counsel nor was he prejudiced by the manner in which his appeal was conducted. Habeas relief is therefore denied as to this claim.

**XII.   Consolidation of Charges and Denial of Motion to Sever**

A.      Legal Standard

31

A joinder, or denial of severance, of counts may prejudice a defendant sufficiently to render his trial fundamentally unfair in violation of due process.  *See Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997); *Herd v. Kincheloe*, 800 F.2d 1526, 1529 (9th Cir. 1986).

A federal court reviewing a state conviction under 28 U.S.C. § 2254 does not concern itself with state law governing severance or joinder in state trials.  *Grisby*, 130 F.3d at 370.  Nor is it concerned with procedural right to severance afforded in federal trials.  *Id.*  Its inquiry is limited to the petitioner's right to a fair trial under the United States Constitution.  To prevail, therefore, the petitioner must demonstrate that the state court's joinder or denial of his severance motion resulted in prejudice great enough to render his trial fundamentally unfair.  *Id.*  In addition, the impermissible joinder must have had a substantial and injurious effect or influence in determining the jury's verdict.  *Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2000).

There is a "high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible."  *United States v. Lewis*, 787 F.2d 1318, 1322 (9th Cir. 1986).  This risk is especially great when the prosecutor encourages the jury to consider the two sets of charges in concert, e.g., as reflecting a modus operandi even though the evidence is not cross admissible, and when the evidence of one crime is substantially weaker than the evidence of the other crime.  *Bean v. Calderon*, 163 F.3d 1073, 1084-85 (9th Cir. 1998).  But joinder generally does not result in prejudice if the evidence of each crime is simple and distinct (even if the evidence is not cross admissible), and the jury is properly instructed so that it may compartmentalize the evidence.  *Id.* at 1085-86; *see, e.g., Davis v. Woodford*, 384 F.3d 628, 638-39 (9th Cir. 2004) (denial of motion to sever trial of capital and noncapital charges based on separate incidents not a violation of due process because evidence was cross-admissible, the weight of evidence with respect to each incident was roughly equal, the evidence as to each incident was distinct, and the jury was properly instructed); *Sandoval*, 241 F.3d at 773 (given the strength of the State's case against petitioner on both sets of murders and the cross-admissibility of the evidence on each set, petitioner's trial was not actually prejudiced by the joinder).  Similarly, joinder generally does not result in prejudice if the jury did not convict on all counts because it presumably was able to compartmentalize the evidence.

*Park v. California*, 202 F.3d 1146, 1149-50 (9th Cir. 2000).

  B.  Analysis

  In Claim XIII, Petitioner claims that the trial court erred in granting the prosecution's motion to consolidate the Owens burglary counts with the Handleman/Anderson burglary and firearm possession charges (Cl. Tr. 248-250), and in denying his motion to sever the charges (Rep. Tr. 67).

  Rejecting Petitioner's claim on appeal, the California Court of Appeal found as follows:

> We find no abuse of discretion with respect to the court's decision to permit consolidation, or with its refusal to sever the charges. Consolidation was proper because the indictment charged appellant with burglary and receiving stolen property, which is the "same class of crimes or offenses" alleged in the first information relating to the Handleman/Andersen burglary. (Pen. Code, sec. 954.) Consolidation is favored because it promotes judicial efficiency and avoids needless harassment of the defendant. (*People v. Ochoa* (1998) 19 Cal. 4th 353, 408-409.)
>
> When the requirements for joinder are satisfied, appellant must make a "clear showing of potential prejudice." (*People v. Sandoval* (1992) 4 Cal.4th 155, 172.) Appellant did not meet that burden. Cross-admissibility of evidence is no longer the "sine qua non of joint trials." We therefore need not decide whether the evidence was cross-admissible, because no other factors suggesting prejudice are present. Neither the evidence of possession of multiple weapons, nor the evidence of prior felony convictions were "unusually likely to inflame the jury." (*Id.* at p. 172.) Appellant was charged only with possession of these weapons, which is far less inflammatory than allegations that they were used in the commission of another offense. The priors were also alleged with respect to the Owens burglary, and trial of the priors was bifurcated. Nor were the charges with respect to the Owens burglary significantly weaker than the Handleman/Andersen burglary charges such that the "aggregate evidence on several charges might well alter the outcome of some or all of the charges." (*Id.* at pp. 172-173.) In the Owens burglary, appellant was caught by the police in the act of carrying away property, and in the Handleman/Andersen burglary, he was found in possession of the stolen property within hours of the offense. With respect to the weapon charges, the indicia of possession were reasonably strong, and because the possession charges were a different type of offense than the burglary, it is doubtful that the evidence of the Owens burglary would have any "spillover" effect causing the jury to find appellant guilty of the possession offenses merely because of the relative strength of the evidence of the burglary charges.

Slip Op. at 5-6.

  Here, there was no due process violation caused by the failure to sever the trial of the several counts against Petitioner. Petitioner does not demonstrate that joinder had a substantial or injurious effect or influence on the outcome. First, this was not a situation where a weak case was joined with a strong case in hopes of a spill-over of the stronger case. As the Court of Appeal noted, there was distinct evidence supporting the Owens burglary and the Handleman/Andersen burglary charges.

33

*See Bean v. Calderon*, 163 F.3d 1073, 1085-1086 (9th Cir. 1998).  Furthermore, there was sufficient evidence of possession of firearms, which was a separate offense from the burglaries, and there was no allegation that he used the weapons in committing the burglaries.  Second, the jury was given limiting instructions, which the jury is presumed to have followed, that the charges were to be considered separately.  Rep. Tr. 1123-1124 ("Each count charges a distinct crime.  You must decide each count separately.").  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  The state court's denial of Petitioner's claim of erroneous joinder was not contrary to, or an unreasonable interpretation of, established Supreme Court precedent.  Petitioner's claim is therefore denied.

**XIII.   Fourth Amendment Claims**

In Claims XIV and XV, Petitioner challenges the searches of his car and home.  These Fourth Amendment claims are not cognizable on federal habeas review.  *Stone v. Powell*, 428 U.S. 465, 493-495 (1976).

**XIV.   In Camera Review of Discovery Hearing**

In his Nineteenth Claim (labeled "Claim XX"), Petitioner requests that the Court review the sealed records of Oakland Police Officers Sarna and Mathison, reviewed *in camera* by the trial court.  Pet., Attachment at 198-200.  A request for *in camera* review of state court discovery proceedings is not cognizable on federal habeas review.   The Due Process Clause guarantees fundamental fairness in a criminal trial, but does not establish the federal courts as a "rulemaking organ for the promulgation of state rules of criminal procedure."  *Spencer v. Texas*, 385 U.S. 554, 563-564 (1967).  The Court of Appeal addressed Petitioner's request for appellate review of the trial court's *in camera* hearing, and found no abuse of discretion.  Slip Op. at 16.  In his federal habeas petition, Petitioner has not raised a constitutional challenge to the trial court's discovery ruling, and does not raise a cognizable habeas claim.

**XV.   Fair and Impartial Jury: Voir Dire**

A.   Legal Standard

A criminal defendant has a constitutional right stemming from the Sixth Amendment to a fair and impartial jury pool composed of a cross section of the community.  *See Holland v. Illinois*, 493 U.S. 474, 476 (1990); *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975); *Duncan v.*

*Louisiana*, 391 U.S. 145, 148-58 (1968).  However, "[t]he Constitution does not always entitle a defendant to have questions posed during Voir dire specifically directed to matters that conceivably might prejudice veniremen against him."  *Ristaino v. Ross*, 424 U.S. 589, 594 (1976) (finding general inquiry about "any bias or prejudice" sufficient to satisfy due process, and specific questioning about racial prejudice unnecessary).  The trial court is granted wide discretion in conducting *voir dire* in areas that might tend to show juror bias.  *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991).  A court's comment to the jury during voir dire that the case involved "a person who came back in to the country after previously having been deported," which was the crime the defendant was charged with, survived plain error analysis, because the comment would have been understood in context to describe the charges presented in the case and because the jury received multiple instructions regarding the burden of proof, the presumption of innocence and the jury's duty to decide the facts.  *United States v. Mendoza-Reyes*, 331 F. 3d 1119, 1121 (9th Cir. 2003).

B.     Analysis

In his Twentieth Claim (the first of two claims labeled "Claim XXI"), Petitioner contends that a potential juror's comments during voir dire tainted the entire panel, and that the trial court erred in its denial of Petitioner's motion for a mistrial, denial of his request for a new panel, and failure to further inquire into juror bias.  Pet., Attachment at 201-208.

The Court of Appeal summarized the factual basis of Petitioner's claim as follows:

> During voir dire, one of the veniremen expressed doubt that he could be fair and impartial because he had strong feelings regarding the charge of being a felon in possession of a firearm.  He then asked defense counsel why appellant was being allowed to handle the confidential juror questionnaires, and objected that it was an invasion of his privacy.  Defense counsel asked if, based upon what the venireman knew about the case, he could be fair to appellant, and the venireman replied, "No way could I."  At the end of his voir dire, defense counsel asked if anyone else, with whom he had not spoken, felt he or she could not be fair.  No one responded.

> Defense counsel moved to dismiss the panel, arguing that the venireman's comments, "injects an element of fear and intimidation. . . ."  The court denied the motion because it found the other jurors were not "in any way affected by him."  During further voir dire, the prosecutor was able to elicit that the venireman did not have any problem with the *attorneys* using the questionnaires, but did have a problem with *appellant* looking at them.  The venireman added, "I think everyone in this courtroom has that problem."  When asked by the prosecutor if his concern was privacy, the venireman responded, "It should be for everyone in here."  The

1
2
  venireman was subsequently excused for cause, and after exercising peremptory challenges and engaging in further voir dire, the jury was sworn.

3
4
5
6
7
     After the jury was excused, appellant renewed his motion to dismiss the panel and moved for a mistrial, arguing that the questions by the district attorney had underscored the grounds for fear and intimidation suggested by the venireman.  The court denied the motion, explaining that it found the venireman in question was a "rather excitable gentleman" who "felt that everybody ought to be concerned, But there was not manifested as best as I could tell the same concerns.  I don't think that the jury has been impacted.  I don't see where there is anything that's come out with respect to the group that we have which indicates that they would be anything other than . . . fair and impartial."

8 Slip Op. at 17-18.

9
10
     The Court of Appeal found that the trial court had no duty to conduct further voir dire, and found no abuse of discretion in failing to do so:

11
12
13
14
15
16
17
18
19
20
     Appellant argues that the court's failure to conduct further voir dire to ascertain whether the ability of other potential jurors to be impartial had been tainted by hearing one person express concern about appellant handling the questionnaires, is reversible error.  We find no abuse of discretion with respect to the court's decision not to conduct further voir dire. [Citation omitted.]  The court reasonably inferred that the other jurors were not influenced by the venireman's comments when no one responded to appellant's counsel's general inquiry whether any prospective juror believed he or she could not be impartial.  When the venireman, in response to the prosecutor's voir dire, asserted that privacy should be the concern of "everyone here," the trial court, based upon its immediate perceptions, determined that despite the venireman's personal belief that everyone should be concerned, he was an "excitable person," and the views he stated were his alone.  The court also reasonably concluded that conducting further voir dire on the subject ran the risk of giving too much credence to the venireman's expressed concerns, [Footnote: Appellant had, in fact, objected that the prosecutor, by questioning the venireman further about the basis for his concern in an apparent attempt to rehabilitate him, instead reinforced in the other prospective jurors' minds that they had reason to be concerned.] and that any taint was eliminated by excusing him for cause.

21
22
     The cases relied upon by appellant concern the quite different circumstance where the court precludes any inquiry into certain areas. [Citations omitted.]

23
24
25
26
27
28
     Here, appellant's counsel was not precluded from conducting inquiry on the question whether other jurors were influenced by the suggestion that appellant's handling of the juror questionnaires was grounds for jurors to feel fear or intimidation.  He ascertained, at least generally, during his voir dire that *no one else* believed they could not be fair and impartial.  Nothing prevented him from specifically asking whether jurors were affected by these statements.  The trial court was in a better position than this court, based upon its immediate perceptions, to assess whether the prosecution's subsequent questions revived the issue and renewed the possibility of taint.  We find no abuse of discretion in its determination that the prosecution's questions did not revive the issue, and that by excusing the venireman for cause, appellant's right to a fair and impartial jury was protected.

United States District Court
For the Northern District of California

1    Slip Op. at 18-19.

2         Petitioner suggests that the venireman's concerns may have been due to racial prejudice, and

3    that the trial court should have further inquired into this possible bias or discharged the whole panel.

4    Pet., Attachment at 206-207. The record reflects, however, that the trial court allowed both the

5    prosecution and defense counsel to ask the entire venire of jurors about whether they could not be

6    fair to Petitioner. *See* Ans., Ex. 3A (11/13/97 Tr.) at 27, 43, 57-58. This questioning adequately

7    covers the potential biases that may have been similarly held by the other jurors, and whether they

8    had "such fixed opinions that they could not judge impartially the guilt of the defendant." *Mu'Min,*

9    500 U.S. at 430. Under these circumstances, additional questioning was not required and the *voir*

10   *dire* examination was consistent with due process. *See id.* at 430-432. Furthermore, the trial court

11   excused the venireman for cause and proceeded with jury selection. *See* Ans., Ex. 3A (11/13/97 Tr.)

12   at 82, 85. In denying Petitioner's motion to dismiss the panel and for a mistrial after the jury was

13   impaneled, the trial court found that the other jurors did not share the venireman's concerns. *Id.* at

14   105. In this context, the trial court did not deprive Petitioner of a fair trial. *See Mendoza-Reyes*, 331

15   F.3d at 1121. The state appellate court's rejection of Petitioner's claim is not contrary to or an

16   unreasonable application of clearly established federal law. Petitioner is therefore not entitled to the

17   writ on this claim.

18   **XVI.   Jury Instructions**

19        Petitioner claims that his right to due process was violated by the trial court's refusal to

20   instruct the jury on the claim-of-right defense as to Counts 7 and 8 on the Owens burglary (Twenty-

21   First Claim, which is the second claim entitled "Claim XXI"); refusal to instruct on the proof of

22   possession on the firearms charges, Counts 3, 4 and 6 (Claim XXII); and the instruction from

23   CALJIC 2.15 concerning corroborating evidence of possession of stolen property (Claim XXIII).

24        As discussed in Section IX.A, *supra* at 27-28, a criminal defendant has a due process right to

25   adequate instructions on his theory of the case, and is entitled to an instruction if the evidence

26   supports it. *Conde v. Henry*, 198 F.3d at 739; *Hopper v. Evans*, 456 U.S. at 611.

27

28

**United States District Court**
For the Northern District of California

A.     Claim-Of-Right Defense (Twenty-First Claim: Claim XXI)

The trial court refused Petitioner's proposed instruction on the claim-of-right defense, *i.e.*, that "defendant's honest belief, even if mistakenly held, that he had a right of claim to the property taken negates the felonious intent necessary to convict him of burglary [or theft]."  Cl. Tr. 689. Petitioner argues that this instruction was supported by Owens' testimony acknowledging that he owed Petitioner under their contract for studio recording services.  Pet., Attachment at 214. Addressing Petitioner's argument that the trial court erred by refusing to instruct the jury as to his claim-of-right defense, the Court of Appeal held that "the trial court properly refused the requested instruction because 'a trial court is not required to instruct on a claim-of-right defense unless there is evidence to support an inference that appellant acted with a subjective belief he or she had a lawful claim on the property.'"  Slip Op. at 21-22 (citation omitted).

The Court of Appeal held that the evidence did not support the inference that Petitioner had a bona fide belief in a lawful claim to the property he took: "according to Owens, appellant had paid only $320 for the recording time, yet the items he removed from Owens's home included two keyboards worth $1,000 and $1,800, respectively, and a bass worth $2,000.  The huge disparity between the value of the alleged debt, and the property appellant took, undermines any reasonable inference that appellant had a bona fide belief that he had a legal claim to the property he took."  *Id.* at 22 (footnote omitted).  Furthermore, Owens admitted that he failed to give Petitioner's tape-recording to him, giving it instead to a third party without Petitioner's knowledge or consent.  Rep. Tr. at 734-737.  However, as the prosecution argued to the trial judge, Petitioner, took items of value not specifically related to the tape-recording that was allegedly owed to him.  *See* Rep. Tr. 971-973. *People v. Alvarado*, 133 Cal. App. 3d 1003, 1022 (1 Dist., 1982).  Under these circumstances, the evidence presented did not support a claim-of right defense, and, consequently, the absence of a claim-or-right instruction did not deprive Petitioner of due process.

B.     Proof of Possession (Claim XXII)

The trial court also rejected Petitioner's requested instructions, concerning the possession of firearms counts, that (1) proof of access to a thing, without more, is insufficient to support a finding of possession; and (2) when the premises are shared by more than one person, mere proximity to

38

**United States District Court**
For the Northern District of California

1    contraband, presence on the property, and association with a person or persons having control of it

2    are all insufficient to establish constructive possession.  Pet., Attachment at 218-219; Cl. Tr. 699;

3    Rep. Tr. 964.

4         The state appellate court found that the trial court "properly rejected these pinpoint

5    instructions as argumentative and potentially misleading because they identified particular evidence

6    submitted by the prosecution to support the inference that appellant knowingly excised dominion

7    and control, and could have been understood as telling the jury it could not draw an inference

8    unfavorable to appellant based upon this specific evidence."  Slip Op. at 24 (citation omitted).  The

9    Court of Appeal also found that any error in excluding these instructions was harmless, "because

10   appellant could, and did, make his argument that the evidence did not support the inference that he

11   knowingly exercised dominion and control under the standard instructions."  *Id*.

12        Looking to the evidence presented as well as the overall instructions received by the jury,

13   *Duckett v. Godinez*, 67 F.3d at 745, the firearms were found at a place where Petitioner shared

14   access with others, including his mother and grandmother who lived in the apartment, Ms. James

15   who occasionally stayed there, Petitioner's mother's cousin, Mr. Wesley, and his brother, and

16   Petitioner's friend, L.A. *See* Rep. Tr. 390-394, 455, 485, 491-500, 520-529, 532, 599).  The Cobray

17   handgun described in Count 4 was found in the closet of a bedroom allegedly shared with Ms. James

18   (Rep. Tr. 408-409, 412, 414, 586-588); the assault rifle (Count 3) was found in an armoire behind

19   men's clothing belonging to Petitioner's male relatives (Rep. Tr. 395-403, 432, 496, 526); the loaded

20   .357 handgun (Count 6) was found during a second search of the home, in the bedroom, hidden

21   between the mattresses and the bed (Rep. Tr. 445-446).

22        The evidence presented at trial supported an instruction as to shared access to the rooms

23   where the firearms were found, but the instructions given adequately encompassed the theory of the

24   defense.  The trial court gave general instructions on actual and constructive possession, including

25   the following: "Constructive possession does not require actual possession but does require that a

26   person knowingly exercise control or the right to control a thing, either directly or through another

27   person or persons.  One person may have possession alone, or two or more persons together may

28   share actual or constructive possession."  Rep. Tr. 1111; Cl. Tr. 786.  These instructions adequately

**United States District Court**
For the Northern District of California

1  encompass the defense theory that Petitioner did not exercise control over the firearms. *See Duckett*,

2  67 F.3d at 743-746.

3      Even if the omission of Petitioner's proposed instructions constituted error, however, such

4  error did not have a substantial and injurious effect or influence in determining the jury's verdict.

5  *See Coleman v. Calderon*, 210 F.3d 1047, 1051 (9th Cir. 2000) (applying *Brecht* analysis to claim of

6  instructional error). The instructions given effectively covered Petitioner's defense that despite his

7  access to the home, he did not knowingly exercise control over the firearms. Petitioner presented at

8  trial evidence that others had access to the rooms where the firearms were kept. Furthermore,

9  defense counsel argued in closing that the evidence did not support the inference that Petitioner

10  knowingly exercised dominion and control over the firearms. *See* Rep. Tr. 1068-1069. As for the

11  prosecution's argument that Petitioner need not have exclusive dominion and control over a weapon,

12  the Court of Appeal correctly noted that the prosecutor did not invite the jury to find Petitioner

13  guilty without finding that he "knowingly exercised dominion and control," as the jury was

14  instructed. Rather, the prosecutor explained that evidence of another person's dominion and control

15  over the guns did not preclude the jury from finding that Petitioner also knowingly exercised such

16  dominion and control. Slip Op. at 24 n.9. Accordingly, the omission of the proposed instructions on

17  possession did not have a substantial and injurious effect on the verdict, and habeas relief is not

18  warranted on this claim.

19      C.      CALJIC 2.15

20      As to his conviction on the burglary counts, Petitioner challenges the italicized portion of

21  CALJIC 2.15 as permitting a conviction on less than proof beyond a reasonable doubt:

22          If you find that a defendant was in conscious possession of recently [stolen] property, the
           fact of such possession is not by itself sufficient to permit an inference that the defendant Donald
23          Randolph is guilty of the crime of 459. Before guilt may be inferred, there must be
           corroborating evidence tending to prove defendant's guilt. *However, this corroborating*
24          *evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt.*

25  Pet., Attachment at 224; Rep. Tr. 1114; Cl. Tr. 762.

26      The Court of Appeal held that Petitioner's arguments challenging CALJIC 2.15 as lessening

27  the burden of proof had been considered and rejected in numerous other decisions by the California

28  Supreme Court and state appellate courts. Slip Op. at 24-25 (citing, *inter alia*, *People v. Holt*, 15

1  Cal. 4th 619, 676-677 (no reasonable probability that jury would interpret CALJIC No. 2.15 as

2  meaning it "need not find all of the statutory elements of burglary and robbery had been proven

3  beyond a reasonable doubt").

4       Considering the context of the instructions as a whole and the trial record, here, in addition to

5  the challenged instruction, the trial court also instructed the jury as to the prosecution's correct

6  burden of proof beyond a reasonable doubt. *See* Cl. Tr. 779-780. There was no violation of due

7  process by reason of use of CALJIC No. 2.15 because, considering the instructions as a whole, the

8  prosecution was not relieved of its obligation to prove every fact beyond a reasonable doubt. No

9  habeas relief is warranted on this claim.

10 **XVII.  Amendment of Indictment**

11      A.    Legal Standard

12      The Sixth Amendment guarantees fair notice of all charges. *Calderon v. Prunty*, 59 F.3d

13 1005, 1009 (9th Cir. 1995). The Sixth Amendment requires that an information state the "elements

14 of the offense charged with sufficient clarity to apprise the defendant what to defend against." *Id.*;

15 *see also James v. Borg*, 24 F.3d 20, 24-26 (9th Cir. 1994).

16      B.    Analysis

17      In his Twenty-Fourth Claim (entitled "XIV"), Petitioner argues that the trial court erred in

18 amending the indictment to allege a bail enhancement pursuant to Penal Code Section 12022.1 with

19 the Owens burglary charge (Count 7), in addition to the Section 12022.1 enhancement already

20 alleged with respect to the charge of receiving Owens' stolen property (Count 8). Pet., Attachment

21 at 230-232 ("at the time of the commission of the above offense had been released from custody on

22 BAIL pending trial on an earlier felony offense") (citing Cl. Tr. 191). Petitioner argues that the

23 court violated Section 1009 of the Penal Code, which provides, in pertinent part, that "[a]n

24 indictment or accusation cannot be amended so as to change the offense charged, nor an information

25 so as to charge an offense not shown by the evidence taken at the preliminary examination."

26      The Court of Appeal held that the court did not err because Penal Code section 1009 does not

27 apply to an amendment to add a sentencing enhancement. Slip Op. at 30. "The section 12022.1

28 enhancement is not an element of either the burglary or the receiving stolen property offenses

charged in the indictment, and therefore the court did not err in permitting the amendment." *Id.* As the Supreme Court stated in *Almendarez-Torres v. United States*, "[a]n indictment must set forth each element of the crime that it charges. [Citation omitted.] But it need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime." 523 U.S. 224, 228 (1998). The addition of the enhancement to the Owens burglary charge did not add to the elements of the charged burglary offense, and did not violate Petitioner's right to fair notice of all charges, particularly where the enhancement already had been alleged as to a separate count. The state court's denial of Petitioner's claim is not contrary to or an unreasonable application of clearly established federal law. Habeas relief is not warranted on this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. All pending motions are terminated and the clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 18, 2006

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

42